UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:                                                                              Case No.: 07-71129-478

SANDRA ROTHMAN, SLP, P.C., d/b/a                        Chapter 11
ROTHMAN THERAPEUTIC SERVICES,

                                        Debtor.
----------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER

*A p p e a r a n c e s :*

**Pryor & Mandelup, LLP**
*Counsel to the Debtor*
By: Anthony Giuliano, Esq.
675 Old Country Road
Westbury, NY 11590

**Berkman, Henoch, Peterson & Peddy, P.C.**
*Counsel for Arthur J. Kremer, As Receiver*
By: Ronald M. Terenzi, Esq.
100 Garden City Plaza
Garden City, NY 11530

This matter is before the Court pursuant to a motion made by Sandra Rothman, SLP, P.C. d/b/a Rothman Therapeutic Services (the "Debtor") seeking to reject a nonresidential lease the Debtor had entered into pre-petition for premises it had vacated on the same date that the Debtor filed a petition for relief under Chapter 11. The Court granted the Debtor's request to reject the lease, and reserved for a written decision the outstanding issue of whether and to what extent the Debtor was responsible for immediate payment of post-petition rent under 11 U.S. C. § 365(d)(3). The following constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## FACTS

On April 2, 2007 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). The Debtor is engaged in the business of providing therapists, including, but not limited to, occupational therapists, speech therapists, social workers, clinical psychologists, and special education therapists to work in conjunction with hospitals, nursing homes, school districts and other public agencies and private care providers. The Debtor had leased two locations for its operations. One of these locations is 45 Executive Drive, Plainview, New York (the "Premises").[1] Prior to the Petition Date, on March 31, 1995, the Debtor as tenant entered into a lease with T.A.T. Property, a Real Estate Grantor Trust, ("TAT"), as landlord, for the Premises (the "Plainview Lease").[2] TAT is a

---

[1] The other premises leased by the Debtor is located in Rego Park, New York.

[2] On October 14, 2005, TAT filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Southern District of New York bearing case no. 05047223-smb.

1

New York real estate grantor trust whose primary asset is the property underlying the Premises. On March 1, 2002, the Debtor entered into a Second Amendment to Lease with TAT, thereby exercising its option to renew the Plainview Lease. The Plainview Lease obligates the Debtor to make monthly payments of rent in the amount of $17,661.89 through and including February 29, 2008. Thereafter the rent increases annually through and including February 29, 2012. The Plainview Lease also provides that the Debtor is responsible for additional rent consisting of utilities, property insurance and taxes. The rent and additional rent payments are due on the first day of each month for that month.

At one time, the Debtor generated substantial revenues from its use of the Premises by providing services on behalf of both Nassau and Suffolk Counties, as well as various school districts on Long Island. Over the course of the year prior to the Petition Date, the Debtor's business on Long Island became sharply reduced, to the point where the Debtor no longer contracted with Nassau or Suffolk Counties to provide therapists for these areas. As of the Petition Date, the Debtor was in arrears under the Plainview Lease, having failed to pay rent and associated costs due under the Plainview Lease since November, 2006.

The monthly rental payment due under the Plainview Lease for April 1, 2007 came to $19,795.56, consisting of (a) $17,661.89 in base rent, (b) $299.09 in taxes, © $793.46 for electricity, and (d) $1,041.12 for heat. One day later, on the Petition Date, the Debtor vacated the Premises. Seventeen days, later, on April 19, 2007, the Debtor filed a motion to reject the Plainview Lease (the "Motion"). TAT filed an objection to the Motion, stating that pursuant to § 365(d)(3) of the Bankruptcy Code, rejection of the Lease was conditioned upon the Debtor making the April, 2007 rent payment. The hearing on the Motion was held on May 3, 2007. As

of the hearing date, one post petition lease payment became due and owing on May 1, 2007.

At the hearing on the Motion, the Debtor argued that § 365(d)(3) of the Bankruptcy Code does not require the payment of post-petition rent as a condition to rejection. Furthermore, the Debtor had no authority to make a payment of post-petition rent under the terms of an existing cash collateral order entered by this Court. In addition, the Debtor claimed that factual and legal issues exist which could affect the Receiver's claim of an administration expense in either case. According to the Debtor, an issue exists as to whether the Debtor surrendered the Premises to TAT on the Petition Date because the Debtor turned over the key to the Premises. If the Debtor's actions and TAT's actions amounted to a surrender of the Premises, then the Debtor's obligation to pay rent to TAT would have ceased as of April 2, 2007, at the time that TAT received the keys to the Premises. Finally, the Debtor asserts that she paid a security deposit of $30,000 which TAT still holds, and any amounts remaining can be used to satisfy any rent claims against her.

The Court granted the Motion, and an order rejecting the Plainview Lease was entered on May 4, 2007 (the "Lease Rejection Order"). The Court reserved on the following issues:
1) whether and the extent to which TAT is entitled to immediate payment of rent under 11 U.S.C. § 365 (d)(3);
2) notwithstanding § 365(d)(3), whether the Plainview Lease was surrendered prior to entry of the Lease Rejection Order, thereby excusing the Debtor from complying with the obligations under the Plainview Lease from the Petition Date to the date of the Lease Rejection Order; and
3) whether the cash collateral agreement and order the Debtor entered into with Merrill Lynch Business Financial Services, Inc., its secured creditor, precludes the Debtor from paying TAT

under § 365(d)(3) of the Bankruptcy Code.

## DISCUSSION

In order to determine whether TAT is entitled to payment from the Debtor under 11 U.S.C. § 365(d)(3), the Court has undertaken a close examination of this section and the body of case law it has generated. 11 U.S.C. § 365(d)(3) provides in relevant part as follows:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under the unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

This section of the Bankruptcy Code was added pursuant to the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Act"), primarily to solve the problem of the bankrupt tenant who failed to pay rent post-petition.[3] Prior to the addition of this section, landlords had to rely on 11 U.S.C. § 503(b)(1)(A) which required them to make a motion for an administration expense claim. Recovery under such a claim was limited by "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Therefore, a landlord was not guaranteed receipt of rent at the rate stated in the lease, nor was the landlord guaranteed timely payment pursuant to the lease terms. However, the landlord was forced to provide the services required under the lease regardless of whether the tenant was making timely rent and associated payments.

Twenty three years after this section was added to the Bankruptcy Code, courts within

---

[3]Section 365(d)(3) of the Bankruptcy Code was not amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

this circuit and in other circuits still disagree over what this provision means. Courts interpreting this section generally fall into two schools of thought. One group, including three cases at the circuit level, interpret this section as clear and unambiguous, calling for the payment by a debtor of any charges which come due and owing during the period from the date the petition is filed until the lease in question is assumed or rejected. *In re Koenig Sporting Goods, Inc.,* 203 F.3d 986 (6th Cir. 2000); *HA-LO Industries, Inc. v. CenterPoint Properties Trust,* 342 F.3d 794 (7th Cir. 2003); *In re Montgomery Ward Holding* Corp., 268 F.3d 205 (3rd Cir. 2001); In *re Comdisco,* 272 B.R. 671 (Bankr. N.D. Ill. 2002); and *In re R.H Macy & Co., Inc.*, 1994 WL 482948 (S.D.N.Y.) (collectively, the "Performance Date Cases"). Courts following the Performance Date Cases rely on Supreme Court precedent which requires that words in a statute be given their "ordinary, contemporary, common meaning." *Pioneer Investment Serv. Co. v. Brunswick Assoc. Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 1495, 123 L.Ed. 2d 74 (1993) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). Courts adopting this approach find that the term "obligation" means "something that one is legally required to perform under the terms of the lease and . . . such obligation arises when one becomes legally obligated to perform." *In re Montgomery Ward Holding Corp.,* 268 F.3d at 209. Furthermore, these courts find no ambiguity in the term "arising," which can only mean obligations which actually come due during this period between the filing of the petition and the date of rejection or assumption, regardless of their nature. *Urban Retail Properties v. Loews Cineplex Entertainment Corp.*, 2002 WL 535479 (S.D.N.Y.).

    Courts following the Performance Date Cases find further support for their position in the purpose behind the enactment of this provision. Although legislative history need not be

5

examined where a court finds that a statute is clear on its face, courts favoring this approach find that it comports with the purpose of § 365(d)(3), which was to prevent landlords from being forced to provide services to a debtor in bankruptcy without receiving immediate payment according to the lease terms prior to assumption or rejection of a lease. *In re Koenig Sporting Goods, Inc.,* 203 F.3d at 989. These courts also look to the positions of the parties in question, and find that the debtor, which is in control of the date of the filing of the petition and the date a motion to assume or reject a lease is made, is in a better position to determine whether § 365(d)(3) will compel the payment of an onerous, one-time payment under the lease. *Id.* at 989-90.

The other group of courts approach § 365(d)(3) from the standpoint of viewing the Bankruptcy Code as a whole, heeding two well-settled Supreme Court principles. The first principle is that statutory language must be read in context, not in isolation from the entire statute. *In re Handy Andy Home Improvement Centers, Inc.,* 144 F.3d 1125 (7th Cir. 1998) (citing, *inter alia*, *Textron Lycoming Reciprocating Engine Division v. United Automobile, Aerospace & Agricultural Implement Workers,* 523 U.S. 653, 118 S.Ct. 1626, 1629, 140 L.Ed.2d 863 (1998)); *In re McCrory Corp.,* 210 B.R. 934, 939 (S.D.N.Y. 1997) ("*McCrory*") (citing *In re Klein Sleep Products, Inc.,* 78 F.3d 18, 27 (2nd Cir. 1996), which quotes *Dewsnup v. Timm*, 502 U.S. 410, 419, 112 S. Ct. 773, 116 L.Ed2d 903 (1992)); and *In re Ames Department Stores, Inc.*, 306 B.R. 43, 66 (Bankr. S.D.N.Y. 2004) ("*Ames*") (citing , *inter alia, Kelly v. Robinson*, 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). The second principle is that the Supreme Court "'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure.'" *In re NETtel Corp., Inc.*, 289 B.R. 486, 493

(Bankr. D.D.C. 2002) ("*NETtel*") (citing *Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)) (collectively, with the cases cited above, the "Prorating Cases").

When viewed within the context of these two principles, courts adopting the Prorating Cases approach find that the language of § 365(d)(3) is ambiguous. The two meanings created by the language in this statute are that either 1) all obligations arising under the terms of the lease are covered by this section, regardless of their nature or the context of the case, or 2) the obligations are to be prorated over the time period commencing from the date of the petition and ending on the date the lease is deemed rejected. Courts finding such ambiguity have sought guidance from legislative history and intent and to other provisions in the Bankruptcy Code in order to determine the proper meaning of this section of the Bankruptcy Code. As the bankruptcy court in *Ames* pointed out, other sections of the Bankruptcy Code exist concerning the rights and obligations of certain parties after a lease is rejected. For example, § 365(g) provides that rejection of an unexpired lease of the debtor constitutes a breach of the lease immediately before the date of the filing of the petition. In addition, § 502(g) provides that a claim arising from the rejection of a lease under § 365 shall be allowed or disallowed, "the same as if such claim had arisen before the date of the filing of the petition." As such, the *Ames* court concluded that claims arising from a debtor's failure to abide by obligations after rejection turn into pre-petition, not administration claims. To interpret § 365(d)(3) to cover all obligations which become due during the time period between the filing date and the rejection date would contradict the provisions of § 502(g) and § 365(g). As a result, lease obligations accruing post-rejection would be elevated to something akin to administrative claims, versus pre-petition

7

claims pursuant to §§ 502(g) and 365(g).  Therefore, the *Ames* court reasoned that in order to give full meaning to these other sections of the Bankruptcy Code, § 365(d)(3) must be construed to apply on a prorated basis only to that time period from the petition date to the date of rejection.

With respect to whether Congress intended to change the prior practice of prorating a debtor's rent to cover only the post-petition, pre-rejection time period, the Bankruptcy Court for the Southern District of New York noted in *In re Child World* that the Congressional record was devoid of any such indication.   *In re Child World*, 161 B.R. 571, 575 - 76 (Bankr S.D.N.Y. 1993) ("*Child World*").  According to Senator Hatch's commentary to the 1984 Act, § 365(d)(3) was amended to ensure that landlords received "current payment" for their "current services." *Id*. at 575.  The Bankruptcy Court in *Child World* concluded that "Congress did not intend for courts applying § 365(d) to rely mechanically on the billing date to determine which post-petition, pre-rejection obligations under nonresidential leases must be timely paid." *Id*. at 577. This Congressional intent supported a finding that the obligations under the lease are to be prorated over this limited sixty-day time period.

In the case before this Court, TAT would receive a far greater benefit under the Performance Date Cases.  First, TAT would be entitled to immediate payment of the May, 2007 rent and other charges pursuant to § 365(d)(3).  Second, with respect to the time period from the Petition Date to May 1, 2007 (the "Stub Period"), TAT could also file a motion seeking an administration expense claim for the amounts due under the Plainview Lease for those 29 days. Therefore, TAT would receive immediate payment of the rent due for May 1, 2007, plus have an administration rent claim for the rent due under the Stub Period.  Under this scenario, TAT

would arguably be entitled to a total of almost two months' rent on an administration basis in addition to any post-rejection claims it sought under the Plainview Lease.

If the Court follows the Prorating Cases, then pursuant to § 365(d)(3), TAT would be entitled to immediate payment of monthly rent and other charges for a total of 32 days from April 2, 2007 to May 4, 2007, when the Lease Rejection Order was entered. This is equivalent to just over one month's rent. TAT would have no right to assert an administration claim for the Stub Period, as this time period would be covered under the payment pursuant to § 365(d)(3).

Based on the Court's interpretation of § 365(d)(3) in relation to the Bankruptcy Code in its entirety, and the considerable body of case law on this issue, the Court follows the Proration Cases which require that the rent due under the Plainview Lease be prorated for the time period from the Petition Date to the date the Plainview Lease was rejected. The Court is persuaded that this statute should be read in the context of the Bankruptcy Code as a whole, and not in a vacuum. In coming to the same conclusion, the *Ames* court looked to prior case law, including the *McCrory* case, which cited to Second Circuit and Supreme Court authority for the proposition that "'[w]hen Congress amends the bankruptcy laws, it does not write on a clean slate . . .'" *Id*. (other citations omitted). The *Ames* court also aptly pointed out that in recent cases, "'the Supreme Court has tempered its application of the plain meaning rule, particularly where it would effect a major change in practice under the Code as it existed at the time, unless there is support for such a change in the legislative history.'" *Ames,* 306 B.R. at 70 *( citing McCrory*, 210 B.R. at 939). There is scant evidence to support a conclusion that Congress meant to abolish prorating rent obligations, especially when to do so could lead to absurd results. For example, when obligations billed during the post-petition, pre-rejection period are actually

allocable to a period far in advance of this time period, such as real estate taxes, it would be unfair to the debtor to apply this statute in a literal fashion. *See Ames*, 306 B.R. at 71-72 (citing to *McCrory*, where city real estate tax bills, which came due under the lease during the time period from the petition date to the date the lease was rejected, applied to taxes accruing over the following entire year).

In this case, the Debtor would be saddled with making immediate payment for one month's rent, and TAT could assert an administration claim for the Stub Period, effectively giving TAT a windfall to the detriment of the Debtor and its other creditors. Under this scenario, the Court would be authorizing payment to TAT for rent covering the post-rejection period, when the Debtor had vacated the Premises well before the date the Plainview Lease was rejected. The Court agrees with *NETtel* and the other Prorating Cases, which refuse to apply this section of the Bankruptcy Code in a manner which erodes settled principles and disturbs obligations and rights fixed in other parts of the Bankruptcy Code. Therefore, TAT's right pursuant to § 365(d)(3) to payment of rent and other charges under the Plainview Lease is limited to the 32 day period from the Petition Date to the date the Lease Rejection Order was entered .

The next issue is raised by the Debtor, which asserts that it is excused from any obligation to pay post-petition rent to TAT under § 365(d)(3) of the Bankruptcy Code because the Debtor surrendered the keys to the Premises to TAT on the Petition Date, which keys were accepted by TAT. According to the Debtor, this surrender and acceptance terminated the Plainview Lease on the Petition Date. The Debtor concludes that since the lease relationship between the Debtor and TAT was terminated on the Petition Date, the Debtor had no continuing

obligation to make payments under the Plainview Lease.  The Debtor is correct that under New York law, surrender means "'a tenant's relinquishment of possession before a lease has expired, allowing the landlord to take possession and treat the lease as terminated.'"  *Malik v. Hillside Clearview Apartments Realty, LLC*, 192 Misc. 2d 181, 183, 476 N.Y.S.2d 251, 253 (2002) (citing *Black's Law Dictionary,* 7th Ed.). However, a tenant's abandonment of the leasehold does not constitute surrender of the leasehold, which can only occur when a tenant proves that the lessor has elected to treat the abandonment as an offer of surrender of the lease agreement, and the landlord accepts the offer.  *Holy Properties Ltd., L.P. v. Kenneth Cole Productions, Inc.,* 87 N.Y.2d 130, 134, 637 N.Y.S.2d 964 (1995).

In this case, there is no evidence to support a finding that TAT accepted the Debtor's alleged offer to surrender the Premises.  The Debtor turned over the keys to the Premises on the Petition Date, and there is no evidence that TAT took any steps indicating that such turnover constituted an acceptance of an offer of surrender.  Under New York law, a lessor's acceptance of a tenant's keys to leased premises,  standing alone, does not constitute acceptance of  an offer of surrender.  *80 State Street, LLC v. Allwen, Inc.*, 6 A.D.3d 978, 979, 774 N.Y.S.2d 889, 890 (2004).

If anything, TAT's actions conflict with and do not support the Debtor's allegations that TAT accepted Debtor's alleged "surrender" of the Premises.  TAT participated in this case and demanded rent payment from the Debtor after the Debtor had turned over the keys to TAT.  Based on the present facts, the Court cannot conclude the Plainview Lease was terminated by virtue of the Debtor's alleged surrender of the Premises.

Clearly, the Debtor abandoned or vacated the Premises.  The overwhelming majority of

11

case law is clear that § 365(d)(3) applies even where the debtor has vacated the premises prior to rejection. *In re Fifth Ave. Jewelers, Inc.,* 203 B.R. 372, 383 (Bankr. W.D. Pa. 1996); *In re Wingspread Corp.*, 116 B.R. 915, 925 (Bankr. S.D.N.Y. 1990); and *In re Laurence Smith, Inc.,* 127 B.R. 715, 717 (Bankr. D. Conn. 1991). Therefore, the fact that the Debtor was not using the Premises post-petition does not excuse the Debtor from compliance with § 365(d)(3).

The last issue raised by the Debtor regarding whether payment to TAT under the terms of this decision violates the cash collateral order the Debtor entered into with its secured creditor, Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"). Whether the Debtor had budgeted for this expense in connection with its cash collateral order with Merrill Lynch has no bearing on whether Debtor is obligated to make payment under § 365(d)(3). Within ten days of entry of this memorandum decision and order, TAT shall submit to the Debtor a bill for rent and other charges accruing under the Plainview Lease from the Petition Date through May 4, 2007. The Debtor is obligated to pay this amount within ten days thereafter. The Debtor has not indicated whether payment of this obligation will render the Debtor administratively insolvent. If this is the case, the Debtor shall notify the Court and the Court shall schedule a hearing to make further determinations consistent with this memorandum decision and order.

## CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O).

2. Pursuant to 11 U.S.C. § 365(d)(3), the Debtor is obligated to pay to TAT, on a pro-rata basis, rent and other obligations accruing under the Plainview Lease for the period from the Petition Date through May 4, 2007, the date the Plainview Lease was rejected.

3. There is no evidence supporting a finding that a surrender of the Plainview Lease took place. The Debtor did abandon the Premises prior to rejection of the Plainview Lease, but abandonment is not the equivalent of surrender of leased premises. The fact that the Debtor did not continue to occupy the Premises after the Petition Date has no bearing on whether the Debtor is obligated to make payments to TAT pursuant to § 365(d)(3). Therefore, the Debtor is not excused from complying with § 365(d)(3) consistent with this decision and order.

4. The fact that the Debtor is bound by the terms of a cash collateral agreement with Merrill Lynch, which has been so-ordered by this Court, does not excuse the Debtor from complying with § 365(d)(3).

5. TAT shall, within ten days of entry of this memorandum decision and order, notify the Debtor in writing of the amounts due under the Plainview Lease which constitute obligations under § 365(d)(3). The Debtor shall, within ten days thereafter, pay said amount, or notify the Court and TAT in writing that payment of this obligation to TAT will render the Debtor administratively insolvent. If so, then the Court shall schedule a hearing on notice to TAT, Merrill Lynch and the Office of the United States Trustee to make further determinations consistent with this memorandum decision and order.

So Ordered.

Dated: Central Islip, New York
     August 2, 2007                     By: */s/ Dorothy Eisenberg* _____
                                       UNITED STATE BANKRUPTCY JUDGE